# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

BRIDGEPORT MUSIC, INC. and
WESTBOUND RECORDS, INC.,

Plaintiffs,                                        Case No. _____
                                                   Hon. _____
  v.

TUFAMERICA, INC. d/b/a TUFF CITY        **COMPLAINT FOR**
RECORDS, and KAY LOVELACE             **DECLARATORY JUDGMENT**
TAYLOR, individually and on behalf of
the Estate of LeBaron Taylor,

Defendants.                                        **DEMAND FOR JURY TRIAL**
_____/

Richard S. Busch
KING & BALLOW
315 Union Street, Suite 1100
Nashville, TN 37201
Telephone:  (615) 726-5422
Facsimile:   (615) 726-5417
rbusch@kingballow.com

Daniel D. Quick (P48109)
Benjamin M. Sobczak (P73567)
DICKINSON WRIGHT PLLC
2600 West Big Beaver Rd, Ste. 300
Troy, MI 48084
(248) 433-7200
dquick@dickinsonwright.com
bsobczak@dickinsonwright.com

*Attorneys for Plaintiffs*
_____/

## COMPLAINT

Plaintiffs Bridgeport Music, Inc. and Westbound Records, Inc. (collectively, "Plaintiffs"), by and through their attorneys, for their Complaint against TufAmerica, Inc. d/b/a Tuff City Records and Kay Lovelace Taylor, individually and on behalf of the Estate of LeBaron Taylor (collectively, "Defendants") allege as follows:

## NATURE OF THE ACTION

1.      This is a civil action for declaratory relief in the form of a declaratory judgment to clarify the rights and obligations of the parties with respect to certain musical compositions that Plaintiffs have openly exploited since the 1970s. In the face of adverse claims, Plaintiffs bring this declaratory judgment action requesting a Declaration that Plaintiffs have not infringed any rights Defendants, only now, claim to have in the musical works at issue, that Plaintiffs are the rightful owners of the musical works at issue, and that Plaintiffs are the rightful recipient of all royalties Plaintiffs have received from exploiting the musical works at issue—without objection from Defendants, their predecessors in interest, or anyone else for that matter—for nearly fifty years.

## THE PARTIES

2.      Plaintiff Bridgeport Music, Inc. ("Bridgeport") is a music publishing company and corporation incorporated under the laws of the state of Michigan

with its principal place of business located at 18500 W. Ten Mile Road, Southfield, Michigan 48075, in Oakland County. Bridgeport owns musical compositions, including the musical compositions at issue in this action.

3.    Plaintiff Westbound Records, Inc. ("Westbound") is a record company and corporation incorporated under the laws of the state of Michigan with its principal place of business located at 18500 W. Ten Mile Road, Southfield, Michigan 48075, in Oakland County. Westbound owns sound recordings, including the sound recordings at issue in this action.

4.    Defendant TufAmerica, Inc. d/b/a Tuff City Records (hereinafter "TufAmerica") is a corporation organized and existing under the laws of the State of New York. Upon information and belief, TufAmerica's principal place of business is 10 West 37th Street, Suite 601, New York, New York 10018. Upon information and belief, TufAmerica regularly and systematically does business in the state of Michigan by, among other things, negotiating and granting licenses pertaining to the musical compositions at issue in the state of Michigan, and entering into administration agreements with Michigan residents and businesses. Upon information and belief, the agreement under which TufAmerica claims purported rights to the musical compositions and sound recordings at issue was entered into on behalf of entities that operated and/or continue to operate in Michigan. On December 11, 2017, TufAmerica sent a demand letter to Plaintiffs

3

with respect to the musical works at issue, which was sent to Plaintiffs' 18500 W. Ten Mile Road, Southfield, Michigan 48075, address. Plaintiffs' cause of action for declaratory relief arises from, among other things, TufAmerica's demand letter, and the purported rights asserted therein.

5.    Upon information and belief, Defendant Kay Lovelace Taylor ("Taylor"), sued individually and on behalf of the Estate of LeBaron Taylor ("Estate"), is a resident of Scottsdale, Arizona. Upon information and belief, TufAmerica entered into an agreement with Taylor, on behalf of herself, The Estate of LeBaron Taylor, and various now defunct entities that were based in and around Detroit, Michigan. Upon information and belief, Taylor receives a certain percentage of net income earned in respect to TufAmerica's administration agreements with Michigan residents and businesses.

## JURISDICTION AND VENUE

6.    This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338, and 2201. Plaintiffs seek a declaratory judgment under the Declaratory Judgment Act pursuant to 28 U.S.C. § 2201. Plaintiffs are seeking a declaration of rights under the Copyright Act and the Copyright Revision Act, 17 U.S.C. §§ 101 et seq. Given that Defendants' cease and desist letter alleges copyright infringement as well as ownership issues, Plaintiffs' declaratory

judgment claim requires the Court to interpret the Copyright Act, and thus arises under federal law and is properly justiciable in federal court.

7.    Venue of this case is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(2) and 1400(a).

## BACKGROUND

8.    Plaintiffs have been responsible for launching the careers of numerous legendary Detroit musical artists, including the Ohio Players, Funkadelic, and many others.

9.    This dispute centers on the rights to six songs composed by George Clinton ("Clinton"), among others, and recorded by Funkadelic and Parliament in the 1970s. Among the countless musical works that have been released and/or exploited by Plaintiffs, six musical works recorded by Funkadelic or Parliament are at issue in this case, including: (1) "The Victor" a/k/a "Baby I Owe You Something Good"; (2) "Good Old Music"; (3) "Let's Make It Last"; (4) "I'll Wait" a/k/a "I'll Stay"; (5) "Can You Get To That"; and (6) "The Goose (That Laid the Golden Egg)" (hereinafter collectively referred to as the "Funkadelic Works" or "works at issue").

10.    Clinton and Armen Boladian, the owner of Plaintiffs, met in 1966 and Clinton began recording music for Plaintiff Westbound in the late 1960s. At this time, Clinton and Plaintiffs entered into several agreements.

11.    Plaintiff Bridgeport and Clinton entered into an agreement on August 31, 1971 that assigned to Bridgeport an undivided one-half interest in all rights to musical compositions previously and/or subsequently written by Clinton, alone or in collaboration with others, and recorded by Westbound, during a period of five years from the date of the agreement (the "1971 Agreement").

12.    Plaintiff Bridgeport and Clinton also entered into separate agreements with regard to two of the musical compositions at issue, "Good Old Music" and "I'll Stay."

13.    While there exist prior written agreements between them, Plaintiff Westbound and Clinton, individually and as a member of the group Funkadelic, entered into a written agreement on August 30, 1972 for Clinton's exclusive services for the purpose of making master recordings (the "1972 Agreement"). Pursuant to the terms of the 1972 Agreement, all master recordings are unequivocally the exclusive property of Plaintiff Westbound, ". . . no performance recorded by Company [Westbound] hereunder will infringe or violate any right of any person or firm[,] and [] Company [Westbound] may exploit such master recordings made hereunder without liability or obligation to any other person or firm." Additionally, under the 1972 Agreement, "[a]ll master recordings made hereunder, as well as all performances embodied thereon and all phonograph records derived therefrom, together with any property rights therein, whether

presently existing or hereafter created, will be the exclusive property of Company [Westbound] free of any claim whatsoever by Artist [Clinton, individually and as a member of the group Funkadelic] or by anyone deriving rights from Artist."

14.    Plaintiff Westbound and Clinton entered into a subsequent agreement in 1975 in which Clinton acknowledged and agreed that Plaintiff Westbound "shall retain in perpetuity the exclusive worldwide right, title and interest in and to all master recordings and the copyrights thereon embodying the performances of the Group delivered to us [Westbound] prior to the date of this Agreement . . ." (the "1975 Agreement").

15.    On March 4, 1982, Bridgeport, on the one hand, and Clinton and his publishing company Malbiz Music, on the other, entered into an agreement concerning certain musical compositions.  Through an addendum to that agreement (the "1983 Addendum"), on December 2, 1983, Clinton/Malbiz assigned to Bridgeport complete ownership of all musical compositions written or co-written before that date by Clinton, and owned by Malbiz (the "Malbiz Compositions")

16.    For forty to fifty years, Plaintiffs have openly exploited the Funkadelic Works, and the Malbiz Compositions without objection from Defendants or their predecessors in interest.

## DEFENDANTS' PURPORTED RIGHTS IN THE WORKS AT ISSUE

17.    Upon information and belief, Defendant TufAmerica is the owner of the record label Tuff City Music Group and owns the rights to thousands of musical recordings and compositions. Upon information and belief, while Defendant TufAmerica identifies as a record label, it is not known for releasing music. Upon information and belief, Defendant TufAmerica has filed lawsuits against artists such as the Beastie Boys, Christina Aguilera, Jay-Z, and Kanye West, among others.

18.    Defendant TufAmerica purports to have entered into an agreement, on August 9, 2011, with Defendant Taylor on behalf of herself, Revilot Records, Red Cap Records, Solid Hit Records, Solid Hitbound Productions, LeBaron Music, Brute Records, the Estate of LeBaron Taylor and all other companies owned and/or controlled by the Estate (collectively, the "LeBaron Entities"). Upon information and belief, through this agreement, the LeBaron Entities purported to sell, assign, transfer, and set over to Defendant TufAmerica a portion of the ownership interest and all worldwide copyright, renewals and/or other rights in certain musical works (the "LeBaron Works").

19.    On December 11, 2017, Defendant TufAmerica sent a letter to Plaintiffs on behalf of itself and as administrator for LeBaron Music, which, upon information and belief, is a now defunct entity, raising various unfounded

8

assertions relating to copyright infringement and ownership of the musical works at issue.

20.     Plaintiffs responded to Defendant TufAmerica's letter and in doing so, requested that TufAmerica provide some context for its asserted claims. In doing so, Plaintiffs informed Defendant TufAmerica that Bridgeport has had registered copyrights in each of the musical works at issue for nearly fifty years, and has openly exploited each since the 1970s without any objection or claim to ownership by Defendants, or their predecessors in interest. Plaintiffs also informed Defendant TufAmerica that Bridgeport registered the musical works at issue with BMI in the 1970s, and has been receiving royalties on the works at issue since that time, again without any objection or claim to rights by Defendants, their predecessors in interest, or anyone else for that matter. Plaintiffs asked TufAmerica to provide any contracts or agreements relating to the works at issue so that Plaintiffs would be able to more fully evaluate the purported basis of its claims.

21.     On January 5, 2018, Defendant TufAmerica sent Plaintiffs a second letter, doubling down on its threats, and stating that while there may never have been a "formal objection or claim" brought against Plaintiffs prior to this point by Defendants or their predecessors in interest, nothing precludes Defendant TufAmerica from now asserting its rights. Notably, TufAmerica failed to provide any supportive documentation in response to Plaintiffs' request.

22.     Plaintiffs are informed and believe that Defendants, or those whose interests Defendants represent, claim that the compositions embodied in the Funkadelic Works are derivative works of musical compositions to which Defendants claim to have rights.

23.     Plaintiffs are informed and believe that Defendants, or those whose interests Defendants represent, claim an ownership interest in the musical compositions allegedly underlying the Funkadelic Works.

24.     Plaintiffs are informed and believe that Defendants, or those whose interests Defendants represent, claim rights to master recordings embodying musical compositions allegedly underlying the Funkadelic Works, which, Defendants claim, were owned and/or controlled by the LeBaron Entities.

25.     Upon information and belief, Defendants claim their predecessors in interest registered copyrights in the works at issue with the copyright office prior to any registration by Plaintiffs.

26.     Upon information and belief, any copyrights related to the Funkadelic Works Defendants, or their predecessors in interest, claim to have are invalid.

27.     Upon information and belief, Defendants claim that Plaintiffs' release and continued exploitation of the Funkadelic Works constitute an infringement of Defendants' copyrights, which infringement has been ongoing since the creation of the works at issue in the 1970s.

28.    BMI is a performing rights organization that acquires performance rights from music writers and publishers, grants licenses for those rights, and then collects and distributes performance royalties. The musical works at issue were registered by Bridgeport to BMI since the 1970s. This information would have been available to anyone who inquired with BMI, including Defendants and/or their predecessors in interest.

29.    Upon information and belief, Defendants' claim that Bridgeport's BMI registrations with respect to the works at issue, which date back to the 1970s, were done without proper authority. Upon information and belief, neither Defendants nor their predecessors in interest ever objected to Bridgeport's BMI registrations with respect to any of the works at issue, despite those registrations occurring in the 1970s. Upon information and belief, Defendants claim entitlement to royalties stemming from such registrations, despite the fact that neither Defendants nor their predecessors in interest ever objected to such registrations.

30.    To-date, aside from the above-referenced agreement between Defendants and the LeBaron Entities dated August 9, 2011, Defendants have not provided Plaintiffs any contracts, assignments, and/or other agreements with respect to any rights Defendants or their predecessors in interest claim to have to works that predate the Funkadelic Works.

31.    Upon information and belief, all of Defendants' claims to purported rights in the Funkadelic Works are baseless. Upon information and belief, all of Defendants' claims regarding Plaintiffs' alleged impropriety with respect to the Funkadelic Works are baseless. Upon information and belief, any potential claims Defendants purport to have with respect to the Funkadelic Works are untimely.

## PLAINTIFFS' OPEN AND CONTINUOUS EXPLOITATION OF THE WORKS AT ISSUE

32.    As detailed below, Plaintiffs have an ownership interest in each of the Funkadelic Works at issue.

33.    As detailed below, Plaintiffs have openly exploited the six Funkadelic Works at issue since the 1970s.

34.    To be clear, there are two separate copyrights that exist in each musical work: one for the sound recording and one for the musical composition embodied in the sound recording.  As a further point of clarification, sound recordings fixed on or after February 15, 1972 are protected under federal copyright law, but recordings fixed before that date are protected by a patchwork of state statutory and common law.

35.    As discussed below, each of the Funkadelic Works at issue in this action that were recorded for Westbound, are owned by Westbound pursuant to the 1972 and 1975 agreements referenced herein, and any single song recording agreements referenced herein.   Any previous recording of the musical

12

compositions allegedly underlying the Funkadelic Works which were not recorded for Westbound or at Westbound's direction (to the extent they exist), are not involved in this action, and have never been exploited by Plaintiffs. Bridgeport has claimed ownership to the musical compositions of the Funkadelic Works pursuant to the 1971 Agreement and 1983 Addendum, as well as any single song agreements referenced herein.

36.    The first musical work subject of Defendant TufAmerica's letter to Plaintiffs raising various unfounded assertions relating to copyright infringement and ownership, "The Victor" a/k/a "Baby, I Owe You Something Good," was recorded by Funkadelic for Westbound and released on the Westbound album *Let's Take it to the Stage* in 1975.

37.    Plaintiffs have the right to exploit "Baby, I Owe You Something Good" pursuant to the above-referenced 1971 Agreement, 1972 Agreement, 1975 Agreement, and 1983 Addendum.

38.    Plaintiff Bridgeport is listed as a copyright claimant on the copyright registration for "Baby, I Owe You Something Good," United States Copyright Registration number PA0000557896 dated November 4, 1991.

39.    Plaintiff Westbound is listed as a copyright claimant on the sound recording copyright registration for the album *Let's Take it to the Stage*, United States Copyright Registration number N29052 dated June 25, 1975.

40.    "Baby, I Owe You Something Good" has been registered at BMI to Plaintiff Bridgeport (100%) since 1973.

41.    Plaintiff(s) have openly exploited "Baby, I Owe You Something Good" since the 1970s.

42.    Upon information and belief, Defendant TufAmerica's demand letter dated December 11, 2017, represents the first claim by Defendants, or their predecessors in interest, relating to alleged ownership of "Baby, I Owe You Something Good."

43.    The second musical work subject of Defendant TufAmerica's letter to Plaintiffs raising various unfounded assertions relating to copyright infringement and ownership, "Good Old Music," was recorded by Funkadelic for Westbound in 1970 and released on the Westbound album *Funkadelic*.

44.    Bridgeport and Clinton entered into an agreement on November 10, 1967 wherein Clinton assigned, transferred, and delivered all rights to the musical composition "Good Old Music" to Bridgeport. It is also covered by the above-referenced 1971 Agreement, 1972 Agreement, 1975 Agreement, and 1983 Addendum.

45.    Plaintiff Bridgeport is listed as a copyright claimant on the copyright registration for "Good Old Music," United States Copyright Registration number EU232643 dated February 16, 1971, and renewed on September 30, 2003.

Plaintiffs are listed as copyright claimants on the copyright registration for "Good Old Music," United States Copyright Registration number PA0000627685 dated August 28, 1992.

46.    "Good Old Music" has been registered at BMI to Plaintiff Bridgeport (100%) since 1968.

47.    Plaintiff(s) have openly exploited "Good Old Music" since the 1970s.

48.    Upon information and belief, Defendant TufAmerica's demand letter dated December 11, 2017, represents the first claim by Defendants, or their predecessors in interest, relating to alleged ownership of "Good Old Music."

49.    The third musical work subject of Defendant TufAmerica's letter to Plaintiffs raising various unfounded assertions relating to copyright infringement and ownership, "Let's Make It Last," was recorded by Funkadelic in 1973 for Westbound and released on the Westbound album *Cosmic Slop*.

50.    Plaintiffs have the right to exploit "Let's Make It Last" pursuant to the above-referenced 1971 Agreement, 1972 Agreement, 1975 Agreement, and 1983 Addendum.

51.    Plaintiff Bridgeport is listed as a copyright claimant on the copyright registration for "Let's Make It Last," United States Copyright Registration number EU438646 dated October 17, 1973, and renewed on January 2, 2001. Plaintiff Bridgeport is listed as a copyright claimant on the copyright registration for "Let's

Make It Last," United States Copyright Registration number PA0001050781 dated June 12, 1998.

52.    Plaintiff Westbound is listed as a copyright claimant on the sound recording copyright registration for the album *Cosmic Slop*, United States Copyright Registration number N8389 dated May 23, 1973.

53.    "Let's Make It Last" has been registered at BMI/ASCAP to Plaintiff Bridgeport and Southfield Music, Inc. (100%) since 1973.

54.    Plaintiff(s) have openly exploited "Let's Make It Last" since the 1970s.

55.    Upon information and belief, Defendant TufAmerica's demand letter dated December 11, 2017, represents the first claim by Defendants, or their predecessor in interest, relating to alleged ownership of "Let's Make It Last."

56.    The fourth musical work subject of Defendant TufAmerica's letter to Plaintiffs raising various unfounded assertions relating to copyright infringement and ownership, "I'll Wait" a/k/a "I'll Stay," was recorded by Funkadelic for Westbound and released on the Westbound album *Standing on the Verge of Getting It On* in 1974.

57.    Plaintiffs have the right to exploit "I'll Stay" pursuant to the above-referenced 1971 Agreement, 1972 Agreement, 1975 Agreement, and 1983 Addendum. Additionally, Bridgeport, Clinton, and fellow co-writer Grace Cook

entered into an agreement on June 6, 1974, wherein Clinton and Cook sold, assigned, transferred, and delivered the then unpublished "I'll Stay" musical composition to Bridgeport.

58.    Plaintiff Bridgeport is listed as a copyright claimant on the copyright registration for "I'll Stay," United States Copyright Registration number EU891961 dated October 9, 1974, and renewed on September 30, 2003. Plaintiff Bridgeport is listed as a copyright claimant on the copyright registration for "I'll Stay," United States Copyright Registration number PA0000548294 dated December 13, 1991.

59.    Plaintiff Westbound is listed as a copyright claimant on the sound recording copyright registration for the album *Standing on the Verge of Getting It On*, United States Copyright Registration number N15283 dated April 25, 1974.

60.    Plaintiff(s) have openly exploited "I'll Stay" since the 1970s.

61.    Upon information and belief, Defendant TufAmerica's demand letter dated December 11, 2017, represents the first claim by Defendants, or their predecessors in interest, relating to alleged ownership of "I'll Stay."

62.    The fifth musical work subject of Defendant TufAmerica's letter to Plaintiffs raising various unfounded assertions relating to copyright infringement and ownership, "Can You Get To That," was recorded by Funkadelic for Westbound and released on the Westbound album *Maggot Brain* in 1971.

63.     Plaintiffs have the right to exploit "Can You Get To That" pursuant to the above-referenced 1971 Agreement, 1972 Agreement, 1975 Agreement, and 1983 Addendum.

64.     Plaintiff Bridgeport is listed as a copyright claimant on the copyright registration for "Can You Get To That," United States Copyright Registration number EU274894 dated September 8, 1971, and renewed on January 4, 1999. Plaintiff Bridgeport is listed as a copyright claimant on the copyright registration for "Can You Get To That," United States Copyright Registration number PA0001053067 dated June 12, 1998.

65.     Plaintiff(s) have openly exploited "Can You Get To That" since the 1970s.

66.     Upon information and belief, Defendant TufAmerica's demand letter dated December 11, 2017, represents the first claim by Defendants, or their predecessors in interest, relating to alleged ownership of "Can You Get To That."

67.     The sixth musical work subject of Defendant TufAmerica's letter to Plaintiffs raising various unfounded assertions relating to copyright infringement and ownership, "The Goose" a/k/a "The Goose (That Laid the Golden Egg)," was recorded by Parliament in 1974 and released by an unaffiliated record label, Casablanca Records, on the album *Up for the Down Stroke*.

68.    Plaintiff Bridgeport has the right to exploit "The Goose" pursuant to the above-referenced 1983 Addendum. Clinton and co-writer Eddie Hazel ("Hazel") had a songwriter agreement with Malbiz Music, Inc. ("Malbiz") dated July 1, 1974, wherein Clinton and Hazel expressly assigned all rights to "The Goose" to Malbiz.  As discussed above, in the 1983 Addendum, Clinton and Malbiz assigned to Plaintiff Bridgeport complete ownership of all musical compositions written or co-written before that date by Clinton, and owned by Malbiz. Plaintiff Bridgeport's interest in "The Goose" was further clarified in an agreement dated October 18, 1991, between Bridgeport and Warner-Tamerlane (as successor to Casablanca), wherein it was recognized that Plaintiff Bridgeport owns an undivided one half interest in the copyrights to certain musical compositions recorded by Clinton for Casablanca Records, including "The Goose" and other compositions.  Plaintiff Bridgeport subsequently acquired through written agreement the remaining one half interest in the copyrights to certain musical compositions recorded by Clinton for Casablanca Records, including "The Goose."

69.    Clinton and Hazel are listed as copyright claimants on the copyright registration for "The Goose," United States Copyright Registration number EU597869 dated June 30, 1975, and renewed by Bridgeport on September 30, 2003. Plaintiff Bridgeport is listed as a copyright claimant on the copyright

registration for "The Goose," United States Copyright Registration number PA0000612427 dated November 2, 1991.

70.    "The Goose" has been registered at BMI/ASCAP to Plaintiff Bridgeport and Southfield Music, Inc. (100%) since 1976.

71.    Plaintiff(s) have openly exploited "The Goose" since the 1970s.

72.    Upon information and belief, Defendant TufAmerica's demand letter dated December 11, 2017, represents the first claim by Defendants, or their predecessors in interest, relating to alleged ownership of "The Goose."

73.    Upon information and belief, Defendants now object to activity by Plaintiffs that Defendants' predecessors in interest were aware of since the 1970s, yet made no objection to in the nearly fifty years since.

74.    Upon information and belief, Defendant Taylor now objects to activity by Plaintiffs that Defendant Taylor has been aware of for a number of years.

75.    Upon information and belief, Defendants now object to activity by Plaintiffs that Defendant TufAmerica has been aware of since purportedly entering into an agreement with the LeBaron Entities with respect to the works at issue on August 9, 2011, over six years before first advising Plaintiffs of any alleged issues.

76.    In a letter dated January 5, 2018, Defendant TufAmerica acknowledged that there was no formal objection or claim by Defendants, or their

predecessors in interest, between the 1970s, when Plaintiffs first began to openly exploit the works at issue, and December 11, 2017.

77.    Upon information and belief, before Defendant TufAmerica's initial demand letter dated December 11, 2017, there was never an objection, whether formal or informal, to Plaintiffs regarding any of the works at issue.

78.    Plaintiffs did not commit any affirmative acts or misrepresentations designed to prevent subsequent discovery of Plaintiffs' rights to the works at issue. Similarly, Plaintiffs did not fraudulently conceal the existence or identity of Plaintiffs' ownership and exploitation of the works at issue. Any failure by Defendants, or their predecessors in interest, to discover, or raise, their objections to Plaintiffs' ownership and exploitation of the works at issue is a result of their own neglect.

79.    Upon information and belief, a reasonable person acting with reasonable diligence would have discovered Plaintiffs' claim to ownership and/or exploitation of the musical works at issue in the 1970s.

80.    Given that Plaintiffs continue to exploit the works at issue, as they have since the 1970s, judicial declaration of the parties' respective rights and obligations with respect to the musical works at issue is necessary and appropriate.

## COUNT I:
## <u>DECLARATORY JUDGMENT</u>

81.    Plaintiffs re-allege each and every fact set forth in the preceding Paragraphs of the Complaint as if they were fully set forth herein.

82.    Pursuant to 28 U.S.C. § 2201, the Court may declare the rights and other legal relations of any interested party seeking such declaration whether or not further relief is, or could be, sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

83.    Plaintiffs own some or all of the copyright in the works at issue. Despite Plaintiffs' ownership interest in the works at issue, Defendants have recently notified Plaintiffs that if Plaintiffs do not immediately cease and desist from exploiting the compositions at issue and settle the dispute with Defendants, Defendant TufAmerica will pursue legal action against Plaintiffs.

84.    By reason of the foregoing, there is a present controversy between Plaintiffs and Defendants regarding both Defendants' assertion regarding Plaintiffs' alleged copyright infringement and Defendants' claim to ownership of the works at issue.

85.    Plaintiffs seeks a declaration that Plaintiffs have not committed copyright infringement as a matter of law, given that, among other reasons,

Plaintiffs have an ownership interest in the works at issue such that Plaintiffs cannot be said to infringe.

86.    Further, Plaintiffs seek a declaration that any alleged claim of copyright infringement by Defendants would be barred as untimely as Plaintiffs have openly and consistently exploited the musical compositions at issue since the 1970s without any claim of ownership or alleged rights to the works at issue by Defendants, or their predecessors in interest.

87.    Plaintiffs also seek a declaration that there is no accounting or other form of compensation due to Defendants, given that Defendants do not possess a legal or beneficial interest in the copyrights to the works at issue.

88.    Upon entry of an order granting the sought after Declaratory Judgment, Plaintiffs request the Court order Defendants to pay attorneys' fees, costs, and expenses incurred by Plaintiffs in connection with this action.

## **RELIEF UPON ENTRY OF DECLARATORY JUDGMENT**

WHEREFORE, Plaintiffs respectfully request judgment against Defendants as follows:

(1) A declaration that Plaintiffs have not infringed upon any copyrights allegedly owned and/or controlled by Defendants by re-recording, commercially releasing, and/or otherwise exploiting the works at issue;

(2) A declaration that Plaintiffs are the rightful owners of the works at issue;

(3) A declaration that Defendants do not have an interest in the copyrights to the works at issue;

(4) For costs and attorneys fees incurred herein; and

(5) For such other and further relief as the Court deems just and proper.


Dated: January 11, 2018                      By: /s/ Daniel D. Quick
                                             Richard S. Busch
                                             KING & BALLOW
                                             315 Union Street, Suite 1100
                                             Nashville, Tennessee 37201
                                             Telephone:   (615) 726-5422
                                             Facsimile:    (615) 726-5417
                                             rbusch@kingballow.com

                                             Daniel D. Quick (P48109)
                                             Benjamin M. Sobczak (P73567)
                                             DICKINSON WRIGHT PLLC
                                             2600 West Big Beaver Rd, Ste. 300
                                             Troy, MI 48084
                                             (248) 433-7200
                                             dquick@dickinsonwright.com
                                             bsobczak@dickinsonwright.com

                                             *Attorneys for Plaintiffs*

## JURY TRIAL DEMAND

Plaintiffs respectfully demand a trial by jury.


Dated: January 11, 2018                         By: /s/ Daniel D. Quick

Richard S. Busch

KING & BALLOW

315 Union Street, Suite 1100

Nashville, Tennessee 37201

Telephone:   (615) 726-5422

Facsimile:    (615) 726-5417

rbusch@kingballow.com

Daniel D. Quick (P48109)

Benjamin M. Sobczak (P73567)

DICKINSON WRIGHT PLLC

2600 West Big Beaver Rd, Ste. 300

Troy, MI 48084

(248) 433-7200

dquick@dickinsonwright.com

bsobczak@dickinsonwright.com

*Attorneys for Plaintiffs*