UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------ X

**BRIDGEPORT MUSIC, INC. and WESTBOUND RECORDS, INC.,**

        **Plaintiffs,**

v.

**TUFAMERICA, INC. d/b/a TUFF CITY RECORDS, and KAY LOVELACE TAYLOR, individually and on behalf of the Estate of LeBaron Taylor,**

        **Defendants.**

------------------------------------ X

Case No. 19-cv-01764-PGG

**PLAINTIFFS' LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Civil Rule 56.1, and Individual Practices of Paul G. Gardephe, Section V(A), Bridgeport Music, Inc. ("Bridgeport") and Westbound Records, Inc. ("Westbound") (collectively "Plaintiffs") respectfully submit this Statement of Material Facts, together with references to supporting evidence, in support of their Motion for Summary Judgment:

**I.   BACKGROUND FACTS**

    **A.  Parties**

1.    Plaintiff Bridgeport is a music publishing company and corporation incorporated under the laws of the state of Michigan. /Complaint ((Dkt. 1) ("Compl.") ¶ 2; Busch Decl. ¶ 5 (Deposition of Boladian 21:20-24).

2.    Bridgeport owns musical compositions, including the musical compositions at issue in this action. / Compl. ¶ 2; Busch Decl. ¶ 5 (Deposition of Boladian 21:25-22:2).

3.    George Clinton ("Mr. Clinton") is the author or co-author of the musical compositions at issue in this action: (1) "The Victor" a/k/a "Baby I Owe You Something Good"; (2) "Good Old Music"; (3) "Let's Make It Last"; (4) "I'll Wait" a/k/a "I'll Stay"; (5) "Can You

Get To That"; and (6) "The Goose (That Laid the Golden Egg)" (jointly, the "Bridgeport Compositions"). / Compl. ¶ 5; Boladian Dec. ¶¶ 8, 24-25, 28, 31, 57, 59, 61-62, 64, 68-69, 73-74, 78-80, 84) (Exhibits 1-4, 14-18, 20-21, 23-24, 26-28, 30).

4. Plaintiff Westbound is a record company and corporation incorporated under the laws of the state of Michigan. Compl. ¶ 3; Busch Decl. ¶ 5 (Deposition of Boladian 25:9-21).

5. Westbound owns sound recordings, including the following sound recordings of certain Bridgeport Compositions that Mr. Clinton recorded for Westbound, including: "The Victor" a/k/a "Baby, I Owe You Something Good" from the Westbound album *Let's Take it to the Stage,* "Good Old Music" from the Westbound album *Funkadelic*, "Let's Make It Last" from the Westbound album *Cosmic Slop*, "I'll Wait" a/k/a "I'll Stay" was recorded for Westbound and released on the Westbound album *Standing on the Verge of Getting It On*, and "Can You Get To That" was recorded for Westbound and released on the Westbound album *Maggot Brain* (the "Westbound Sound Recordings"). / Compl. ¶ 3; Busch Decl. ¶¶ 4, 5, 14 ((Exhibits 1-6, Deposition of Clinton 83:23-84:7, Deposition of Boladian 25:18-21)(Exhibit 13); Boladian Decl. ¶¶ 24-25, 28, 31 (Exhibits 1-4).

6. Plaintiffs are both Detroit based companies that have been in existence for approximately 50-60 years. Busch Decl. ¶ 5 (Deposition of Boladian 21:25-22:2, 25:9-14); Boladian Dec. ¶ 4.

7. Plaintiffs are responsible for launching the careers of numerous legendary Detroit musical artists. / Compl. ¶ 8; Boladian Dec. ¶ 5.

8. Armen Boladian ("Mr. Boladian") has owned Plaintiffs at all times. / Compl. ¶ 10; Busch Decl. ¶ 5 ((Deposition of Boladian 21:25-22:2, 25:9-14, 43:3-6); Boladian Decl. ¶ 4.

9. Defendant TufAmerica, Inc. d/b/a Tuff City Records ("TufAmerica") is a

corporation organization and existing under the laws of the State of New York. / Compl. ¶ 4; Amended Answer (Dkt. 32) ¶ 1 (p. 12).

10. Defendant Kay Lovelace Taylor a/k/a Dr. Kay Oliver ("Ms. Taylor") is the widow of Lebaron Taylor. / Compl. ¶ 5; Amended Answer ¶ 8 (p. 13).

11. LeBaron Taylor ("Mr. Taylor") owned several entities including Revilot Records, Red Cap Records, Solid Hit Records, Solid Hitbound Productions, LeBaron Music, Brute Records and LeBaron Music. / Compl. ¶ 5; Amended Answer ¶ 8 (p. 13); Busch Decl. ¶ 5 (Deposition of Boladian 16:18-21).

12. There is no evidence in this record that Groovesville was owned by Mr. Taylor. / Busch. Decl. ¶ 4 ((Deposition of Clinton 71:8-21, 111:4-8, 128:2-7) (Appx. 227, 231, 233)).

13. In his deposition, Mr. Clinton testified that he did not know who owned Groovesville. / Busch. Decl. ¶ 4 ((Deposition of Clinton 128:2-7).

14. Mr. Clinton testified that he thought Groovesville was owned by a person named Don Davis. / Busch. Decl. ¶ 4 ((Deposition of Clinton 71:8-21, 111:4-8, 128:2-7).

15. Mr. Clinton recorded the Bridgeport Compositions "The Victor" a/k/a "Baby, I Owe You Something Good"*,* "Good Old Music", "Let's Make It Last", "I'll Wait" a/k/a "I'll Stay", and "Can You Get To That" for Westbound. / Compl. ¶ 35; Boladian Decl. ¶¶ 22, 24-25, 26, 28 29, 31-33 (Exhibits 1-4); Busch Decl. ¶¶ 4, 12, 14, 23 (Deposition of Clinton 83:23-84:7, Exhibits 11, 13, 22).

### B. The Parties' Relationships

16. Mr. Clinton and Mr. Boladian met in 1966. / Compl. ¶ 10; Busch Decl. ¶ 5 (Deposition of Boladian 29: 9-18); Boladian Decl. ¶ 9.

17. Mr. Clinton recorded for Revilot Records in the 1960s before the label went

bankrupt. / Busch Decl. ¶ 4, 5 ((Deposition of Clinton, 40:12-25, Deposition of Boladian 38:14-21); Boladian Decl. ¶ 10.

18. After Revilot Records went bankrupt, Mr. Clinton began recording for Westbound in the late 1960s. / Compl. ¶ 10; Busch Decl. ¶ 4 ((Deposition of Clinton 83:23-84:7); Boladian Decl. ¶ 11.

19. Mr. Boladian and Mr. Taylor knew each other well and were friendly within the music industry. / Busch Decl. ¶ 5 ((Deposition of Boladian 18:16-23 (Appx. 266)).

20. Mr. Taylor worked as a radio DJ in Detroit and played the Westbound Sound Recordings on air. Busch Decl. ¶ 5 (Deposition of Boladian 18:16-23); Boladian Decl. ¶¶ 15-17.

## II. THE AGREEMENTS BETWEEN MR. CLINTON AND PLAINTIFFS

### A. The Agreements

#### i. 1967 (Assignment of Rights in Bridgeport Composition "Good Old Music")

21. On November 10, 1967, Bridgeport and Mr. Clinton entered into an agreement wherein Mr. Clinton assigned, transferred, and delivered all rights to the Bridgeport Composition "Good Old Music" to Bridgeport (the "1967 Agreement"). / Compl. ¶ 44; Boladian Decl. ¶¶ 34-35 (Exhibit 5).

#### ii. 1971 (Assignment of Rights in Bridgeport Compositions)

22. On August 31, 1971, Bridgeport and Mr. Clinton entered into an agreement wherein Mr. Clinton assigned to Bridgeport an undivided one-half interest in all rights to musical compositions previously and/or subsequently written by Mr. Clinton, alone or in collaboration with others, and recorded by Westbound, during a period of five years from the date of the agreement (the "1971 Agreement"). / Compl. ¶ 11; Boladian Decl. ¶¶ 36-37 (Exhibit 6).

23. On August 1, 1971, Mr. Clinton and fellow co-writer Ernie Harris, on one hand,

and Bridgeport, on the other hand, entered into a separate agreement specifically for the Bridgeport Composition "Can You Get To That" (the "1971 Can You Get To That Agreement"). / Compl. ¶ 11; Boladian Decl. ¶¶ 38-39 (Exhibit 7).

### iii. 1972 (Assignment of Rights in Westbound Sound Recordings)

24. On August 30, 1972, Mr. Clinton, individually and as a member of the group Funkadelic, entered into a sound recording agreement with Westbound, for Mr. Clinton's exclusive services as a recording artist ("1972 Agreement"). / Compl. ¶ 13; Boladian Decl. ¶¶ 40-41 (Exhibit 8).

25. The 1972 Agreement states all master recordings are unequivocally the exclusive property of Plaintiff Westbound, "... no performance recorded by Company [Westbound] hereunder will infringe or violate any right of any person or firm[,] and [] Company [Westbound] may exploit such master recordings made hereunder without liability or obligation to any other person or firm." / Compl. ¶ 13; Boladian Decl. ¶¶ 40-41 (Exhibit 8).

26. The 1972 Agreement further states "[a]ll master recordings made hereunder, as well as all performances embodied thereon and all phonograph records derived therefrom, together with any property rights therein, whether presently existing or hereafter created, will be the exclusive property of Company [Westbound] free of any claim whatsoever by Artist [Clinton, individually and as a member of the group Funkadelic] or by anyone deriving rights from Artist." / Compl. ¶ 13; Boladian Decl. ¶¶ 40-41 (Exhibit 8).

### iv. 1974 (Assignment of Rights in Bridgeport Composition "I'll Stay")

27. On June 6, 1974, Bridgeport, Mr. Clinton, and fellow co-writer Grace Cook entered into an agreement wherein Mr. Clinton and Cook sold, assigned, transferred, and delivered the then unpublished "I'll Stay" Bridgeport Composition to Bridgeport ("The 1974 Agreement"). /

Compl. ¶ 57; Boladian Decl. ¶¶ 42-43 (Exhibit 9).

### v.    1975 (Assignment of Rights in the Westbound Sound Recordings)

28.    In 1975, Mr. Clinton and Westbound entered into another agreement that states Westbound "shall retain in perpetuity the exclusive worldwide right, title and interest in and to all master recordings and the copyrights thereon embodying the performances of the Group delivered to us [Westbound] prior to the date of this Agreement ....". / Compl. ¶ 14; Boladian Decl. ¶¶ 44-45 (Exhibit 10).

### vi.    1982/1983 (Assignment of Rights in Bridgeport Compositions)

29.    On December 2, 1983, through an addendum to a March 4, 1982 Agreement, Mr. Clinton and Malbiz Music assigned, in writing, to Bridgeport complete ownership of all musical compositions written or co-written before that date by Mr. Clinton and owned by Malbiz Music ("1983 Addendum"). / Compl. ¶ 15; Boladian Decl. ¶¶ 46-47 (Exhibit 11).

30.    Previously, on July 1, 1974, Mr. Clinton and co-writer Eddie Hazel had a songwriter agreement with Malbiz Music wherein Mr. Clinton and Hazel expressly assigned all rights to the Bridgeport Composition "The Goose" to Malbiz. / Compl. ¶ 68; Boladian Decl. ¶¶ 48-49 (Exhibit 12).

31.    Bridgeport's interest in the Bridgeport Composition "The Goose" was further clarified in an agreement dated October 18, 1991, between Bridgeport and Warner-Tamerlane (as successor to Casablanca), wherein it was recognized that Bridgeport owns an undivided one half interest in the copyright to certain musical compositions recorded by Mr. Clinton for Casablanca Records, including "The Goose" and other compositions. / Compl. ¶ 68; Boladian Decl. ¶¶ 50-51 (Exhibit 13).

32.    Bridgeport subsequently acquired the remaining one half interest in the copyrights

to certain musical compositions recorded by Mr. Clinton for Casablanca Records, including the Bridgeport Composition "The Goose". / Compl. ¶ 68; Boladian Decl. ¶ 52.

33. In 1999, Mr. Clinton filed an action in the United States District Court for the Northern District of Florida challenging the validity of the 1983 Addendum. / Busch Decl. ¶ 15 (Exhibit 14); Boladian Decl. ¶ 53.

34. After a full trial, the court ruled that the 1983 Addendum was valid, and that Mr. Mr. Clinton assigned ownership of all musical compositions written by him and owned by his publishing company, Malbiz Music, as of March 4, 1982 to Bridgeport Music, and that Bridgeport was the owner of all such musical compositions. / Busch Decl. ¶ 15 (Exhibit 14); Boladian Decl. ¶ 54.

35. Mr. Clinton's appeal of that Order was dismissed, and his post judgment motion was denied. / Busch Decl. ¶ 16 ((Exhibit 15) Boladian Decl. ¶ 55.

### B. The Individual Bridgeport Compositions at Issue

#### i. "The Victor" a/k/a "Baby, I Owe You Something Good"

36. "The Victor" a/k/a "Baby, I Owe You Something Good," was recorded by Funkadelic for Westbound and released on the Westbound album *Let's Take it to the Stage* in 1975. /Compl. ¶ 36; Busch Decl. ¶ 4 (Deposition of Clinton 83:23-84:7); Boladian Decl. ¶ 22-25 (Exhibits 1-2).

37. Bridgeport has the right to exploit the Bridgeport Composition "Baby, I Owe You Something Good" pursuant to the above-referenced 1971 Agreement and 1983 Addendum. / Compl. ¶ 37; Boladian Decl. ¶¶ 36-37, 46-47(Exhibits 6, 11).

38. Westbound has the right to exploit the Westbound Sound Recording "Baby, I Owe You Something Good" from the album *Let's Take it to the Stage* pursuant to the 1972 Agreement,

and 1975 Agreement. / Compl. ¶ 37; Boladian Decl. ¶ 40-41, 44-45 (Exhibits 8, 10).

39.     Bridgeport is listed as a copyright claimant on the copyright registration for "Baby, I Owe You Something Good," United States Copyright Registration number PA0000557896 dated November 4, 1991. / Compl. ¶ 38; Boladian Decl. ¶ 57 (Exhibit 14).

40.     Westbound is listed as a copyright claimant on the sound recording copyright registration for the album *Let's Take it to the Stage*, featuring "Baby, I Owe You Something Good", United States Copyright Registration number SR142111, dated June 15, 1975, and renewed May 15, 1992. / Boladian Decl. ¶ 25 (Exhibit 52).

41.     "Baby, I Owe You Something Good" has been registered at BMI to Plaintiff Bridgeport (100%) since 1973. / Compl. ¶ 40; Boladian Decl. ¶¶ 58-59 (Exhibit 15).

### ii.  "Good Old Music"

42.     "Good Old Music" was recorded by Funkadelic for Westbound in 1970 and released on the Westbound album *Funkadelic*. / Compl. ¶ 43; Boladian Decl. ¶ 32 ; Busch Decl. ¶ 4 ( Deposition of Clinton 83:23-84:7).

43.     Bridgeport has the right to exploit the Bridgeport Composition "Good Old Music" pursuant to the 1967 Agreement, 1971 Agreement, and 1983 Addendum. / Compl. ¶ 44; Boladian Decl. ¶¶ 34-37, 46-47 (Exhibits 5-6, 11).

44.     Westbound has the right to exploit the Westbound Sound Recording "Good Old Music" from the album *Funkadelic* pursuant to the 1972 Agreement and 1975 Agreement. / Compl. ¶ 44; Boladian Decl. ¶¶ 40-41, 44-45 (Exhibits 8, 10).

45.     Bridgeport is listed as a copyright claimant on the copyright registration for "Good Old Music," United States Copyright Registration number EU232643 dated February 16, 1971, and renewed on September 30, 2003. / Boladian Decl. ¶ 62 (Exhibit 17).

46. Plaintiffs are listed as copyright claimants on the copyright registration for "Good Old Music," United States Copyright Registration number PA0000627685 dated August 28, 1992. / Compl. ¶ 45; Boladian Decl. ¶ 61 (Exhibit 16).

47. "Good Old Music" has been registered at BMI to Plaintiff Bridgeport (100%) since 1968. / Compl. ¶ 46; Boladian Decl. ¶¶ 63-64 (Exhibit 18).

48. Mr. Clinton even sent a letter to BMI to correct the record in 1969, informing BMI that Bridgeport, not LeBaron Music, collected royalties for the Work "Good Old Music". / Boladian Decl. ¶¶ 65-66 (Exhibit 19).

### iii. "Let's Make It Last"

49. "Let's Make It Last" that was recorded by Funkadelic in 1973 for Westbound and released on the Westbound album *Cosmic Slop*. / Compl. ¶ 49; Boladian Decl. ¶¶ 26, 28 (Exhibit 3); Busch Decl. ¶ 23 (Exhibit 22).

50. Bridgeport has the right to exploit the Bridgeport Composition "Let's Make It Last" pursuant to the 1971 Agreement and 1983 Addendum. / Compl. ¶ 50; Boladian Decl. ¶ 36-37, 46-47 (Exhibits 6, 11).

51. Westbound has the right to exploit the Westbound Sound Recording "Let's Make It Last" from the album *Standing on the Verge of Getting It On* pursuant to the 1972 Agreement and 1975 Agreement / Compl. ¶ 50; Boladian Decl. ¶ 40-41, 44-45 (Exhibits 8, 10).

52. Bridgeport is listed as a copyright claimant on the copyright registration for "Let's Make It Last," United States Copyright Registration number EU438646 dated October 17, 1973, and renewed on January 2, 2001. / Compl. ¶ 51; Boladian Decl. ¶ 68 (Exhibit 20).

53. Bridgeport is listed as a copyright claimant on the copyright registration for "Let's Make It Last," United States Copyright Registration number PA0001050781 dated June 12, 1998.

/ Compl. ¶ 51; Boladian Decl. ¶ 69 (Exhibit 21).

54. Westbound is listed as a copyright claimant on the copyright registration for the album *Cosmic Slop*, United States Copyright Registration number N8389 dated May 23, 1973. / Compl. ¶ 52; Boladian Decl. ¶ 28 (Exhibit 3).

55. "Let's Make It Last" has been registered at BMI to Plaintiff Bridgeport (100%) and Southfield Music, Inc. (100%) since 1973. / Compl. ¶ 53; Boladian Decl. ¶¶ 70-71 (Exhibit 22).

### iv. "I'll Wait" a/k/a "I'll Stay"

56. "I'll Wait" a/k/a "I'll Stay," that was recorded by Funkadelic for Westbound and released on the Westbound album *Standing on the Verge of Getting It On* in 1974. / Compl. ¶ 56; Boladian Decl. ¶¶ 29, 31 (Exhibit 4); Busch Decl. ¶ 12 (Exhibit 11).

57. Bridgeport has the right to exploit the Bridgeport Composition "I'll Stay" pursuant to the above referenced 1971 Agreement, 1974 Agreement, and 1983 Addendum. / Compl. ¶ 57; Boladian Decl. ¶ 36-37, 42-43, 46-47 (Exhibits 6, 9, 11).

58. Westbound has the right to exploit the Westbound Sound Recording "I'll Stay" from the album *Standing on the Verge of Getting It On* pursuant to the above referenced 1972 Agreement, and 1975 Agreement. / Compl. ¶ 57; Boladian Decl. ¶ 40-41, 44-45 (Exhibits 8, 10).

59. Bridgeport is listed as a copyright claimant on the copyright registration for "I'll Stay," United States Copyright Registration number EU891961 dated October 9, 1974, and renewed on September 30, 2003. / Compl. ¶ 58; Boladian Decl. ¶ 74 (Exhibit 24).

60. Bridgeport is listed as a copyright claimant on the copyright registration for "I'll Stay," United States Copyright Registration number PA0000548294 dated December 13, 1991. / Compl. ¶ 58; Boladian Decl. ¶ 73 (Exhibit 23).

61. Westbound is listed as a copyright claimant on the sound recording copyright

registration for the album *Standing on the Verge of Getting It On*, United States Copyright Registration number SR0000318918, dated February 13, 2002. / Compl. ¶ 59; Busch Decl. ¶ 12 (Exhibit 11).

62. Westbound is also listed as a copyright claimant on the sound recording copyright registration for the album *Standing on the Verge of Getting It On*, United States Copyright Registration number N290483, dated March 7, 1975. / Boladian Decl. ¶ 31 (Exhibit 4).

63. "I'll Stay" has been registered at BMI to Bridgeport (100%) since 1974. / Boladian Decl. ¶¶ 75-76 (Exhibit 25).

   **v. "Can You Get to That"**

64. "Can You Get To That," that was recorded by Funkadelic for Westbound and released on the Westbound Album *Maggot Brain* in 1971. / Compl. ¶ 62; Boladian Decl. ¶ 33; Busch Decl. ¶ 14 (Exhibit 13).

65. Bridgeport has the right to exploit the Bridgeport Composition "Can You Get To That" pursuant to the 1971 Agreement, the 1971 Can You Get To That Agreement, and 1983 Addendum. / Compl. ¶ 63; Boladian Decl. ¶ 36-39, 46-47 (Exhibits 6-7, 11).

66. Westbound has the right to exploit the Westbound Sound Recording "Can You Get To That" from the album *Maggot Brain* pursuant to the 1972 Agreement and 1975 Agreement. / Compl. ¶ 63; Boladian Decl. ¶ 40-41, 44-45 (Exhibits 8, 10).

67. Bridgeport is listed as a copyright claimant on the copyright registration for "Can You Get To That," United States Copyright Registration number EU274894 dated September 8, 1971, and renewed on January 4, 1999. / Compl. ¶ 64; Boladian Decl. ¶¶ 78-79 (Exhibits 26-27).

68. Bridgeport is listed as a copyright claimant on the copyright registration for "Can You Get To That," United States Copyright Registration number PA0001053067 dated June 12,

1998. / Compl. ¶ 64; Boladian Decl. ¶ 80 (Exhibit 28).

69.     "Can You Get to That" has been registered at BMI to Plaintiff Bridgeport (100%) since 1971. / Boladian Decl. ¶¶ 81-82 (Exhibit 29).

### vi. "The Goose" a/k/a "The Goose (That Laid the Golden Egg)"

70.     "The Goose" a/k/a "The Goose (That Laid the Golden Egg)," was recorded by Parliament in 1974 and released by an unaffiliated record label, Casablanca Records, on the album *Up for the Down Stroke*. / Compl. ¶ 67.

71.     Bridgeport has the right to exploit the Bridgeport Composition "The Goose" a/k/a "The Goose (That Laid the Golden Egg)" pursuant to the 1974 Goose Agreement and 1983 Addendum. / Compl. ¶ 68; Boladian Decl. ¶ 46-49 (Exhibits 11-12).

72.     Mr. Clinton and Hazel are listed as copyright claimants on the copyright registration for "The Goose," United States Copyright Registration number EU597869 dated June 30, 1975, and renewed by Bridgeport on September 30, 2003. / Compl. ¶ 69; Busch Decl. ¶ 13 (Exhibit 12).

73.     Bridgeport is listed as a copyright claimant on the copyright registration for "The Goose," United States Copyright Registration number PA0000612427 dated November 2, 1991. / Compl. ¶ 69; Boladian Decl. ¶ 84 (Exhibit 30).

74.     "The Goose" has been registered at BMI to Plaintiff Bridgeport and Southfield Music, Inc. (100%) since 1976. / Compl. ¶ 70; Boladian Decl. ¶¶ 84-86 (Exhibit 31).

### III. PLAINTIFFS' OPEN EXPLOITATION OF THE BRIDGEPORT COMPOSITIONS

75.     Plaintiffs can demonstrate a direct chain of title for the Bridgeport Compositions from Mr. Clinton to themselves. / Boladian Decl. ¶¶ 34-52 (Exhibits 5-13).

76.     Plaintiff(s) have openly exploited the Bridgeport Compositions since the 1970s. / Compl. ¶¶ 41, 47, 60, 65, 71; Boladian Decl. ¶¶ 24-25, 28-31, 60-62, 68-71, 73-76, 78-82, 84-86

(Exhibits 1-4, 16-17, 20-31).; Busch Decl. ¶¶ 6-10, 12-14, 23 (Exhibits 5-9, 11-13).

77. While Mr. Boladian was aware of Mr. Clinton and Funkadelic's prior releases of sound recordings, his understanding was that Clinton and Funkadelic left Mr. Taylor's label, Revilot Records, "free and clear" with ownership of all rights in their musical compositions and sound recordings. / Busch Decl. ¶ 5 (Deposition of Boladian 34:25-35:6); Boladian Decl. ¶ 12.

78. Plaintiffs registered the Bridgeport Compositions with BMI in the 1970s and have been receiving royalties for the Bridgeport Compositions since that time. / Boladian Decl. ¶¶ 58-59, 63-65, 70-71, 75-76, 81-82, 85-86 (Exhibits 15, 18, 22, 25, 29, 31).

79. Mr. Clinton never received royalties from Revilot Records. / Busch Decl. ¶ 4 (Deposition of Clinton 111:12-14).

80. Mr. Clinton never received royalties for the Bridgeport Compositions from Mr. Taylor or any of Mr. Taylor's other entities. / Busch Decl. ¶ 4 (Deposition of Clinton 111:15-112:1).

### A. Mr. Taylor's Knowledge of Plaintiffs' Open Exploitation of the Bridgeport Compositions

81. Mr. Taylor knew that Bridgeport claimed ownership of the Bridgeport Compositions. / Busch Decl. ¶ 5 (Deposition of Boladian 20:20-24, 63:6-8); Boladian Decl. ¶¶ 16-18.

82. Mr. Taylor knew that Mr. Clinton recorded the Westbound Sound Recordings for Westbound and that Westbound claimed ownership of them. / Busch Decl. ¶ 5 (Deposition of Boladian 20:20-24, 63:6-8) ; Boladian Decl. ¶¶ 18-19.

83. Mr. Taylor never challenged Bridgeport's ownership of the Bridgeport Compositions or Westbound's ownership of the Westbound Sound Recordings throughout his entire life. / Busch Decl. ¶ 5 (Deposition of Boladian 20:20-24, 63:6-8); Boladian Decl. ¶¶ 18-19.

84. Public performance royalties collected by BMI for the Bridgeport Compositions were not paid to Mr. Taylor or any of his entities, but instead paid directly to Bridgeport. / Boladian Decl. ¶¶ 21, 58-59, 63-65, 70-71, 75-76, 81-82, 85-86 (Exhibits 15, 18, 22, 25, 29, 31).

85. Mr. Taylor did not seek to collect royalties on the Bridgeport Compositions. / Busch Decl. ¶ 4 (Deposition of Clinton 111:12-112:1; Boladian Decl. ¶ 21.

86. Mr. Taylor never advised Mr. Clinton that he thought the Bridgeport Compositions claimed by Plaintiffs were actually owned by him. / Busch Decl. ¶ 4 ((Deposition of Clinton 112:2-5); Boladian Decl. ¶ 20.

## IV.  DEFENDANTS' ALLEGED RIGHTS IN THE BRIDGEPORT COMPOSITIONS

### A. Mr. Clinton's Alleged Assignments to Mr. Taylor and/or His Entities

87. TufAmerica asserts that it, as administrator of Ms. Taylor and the entities owned by Mr. Taylor, is the rightful owner of the copyright in and to the Bridgeport Compositions. / Amended Answer, generally; Busch Decl. ¶¶ 17-18 (Exhibits 16-17).

88. There is no evidence of any written assignment from Mr. Clinton to Mr. Taylor or any of his entities. / Busch Decl. ¶¶ 3-4 (Deposition of Clinton 110:24-112:3, Deposition of Ms. Taylor 15:5-11).

89. There is no evidence of any written assignment from Mr. Clinton to Groovesville. / Busch Decl. ¶ 3-4 (Deposition of Clinton 110:24-112:3, Deposition of Ms. Taylor 15:5-11).

90. Mr. Clinton never signed any publishing agreements with Groovesville directly. / Busch Decl. ¶ 4 ((Deposition of Clinton 110:24-112:3).

91. Defendants assert that Mr. Taylor, Groovesville, or one of Mr. Taylor's entities filed copyright registrations for the Bridgeport Compositions ""Let's Make It Last", "The Goose (That Laid The Golden Egg)", "Good Old Music", "I'll Wait", "What You Been Growing", and

"the I Owe You Something Composition."[1] / Amended Answer ¶¶ 16, 18, 20, 22, 24, 26, 28; Busch Decl. ¶¶ 6-10 (Exhibits 5-9).

92. Defendants assert the musical work, "What You Been Growing," was re-recorded as "Can You Get That" on the 1971 Westbound album *Maggot Brain* and the two compositions are otherwise identical. / Amended Answer ¶ 10, fn. 2.

93. Mr. Clinton testified that he entered into a recording agreement with Revilot Records in 1965, but he does not know where the alleged agreement is and does not know any of the terms of the agreement, including the term of the agreement and the royalty rate. / Busch Decl. ¶ 4 (Deposition of Clinton 47:13-48:23).

94. Mr. Clinton testified that he did not know whether the recording agreement with Revilot Records contained any provision concerning the Bridgeport Compositions, or what any such provision stated if one even existed. / Busch Decl. ¶ 4 (Deposition of Clinton 47:13-48:23).

95. Mr. Clinton testified that he never assigned any musical compositions to Mr. Taylor or any of Mr. Taylor's entities. / Busch Decl. ¶ 4 ((Deposition of Clinton 110:24-111:3).

96. While Mr. Clinton stated that Groovesville may have been a publisher of certain musical compositions pursuant to the Revilot Agreement, he did not know what the terms in the Revilot Agreement stated, or whether there was any assignment of musical compositions whatsoever. / Busch Decl. ¶ 4 ((Deposition of Clinton 47:13-49:2, 110:1-112:3).

97. Mr. Clinton never signed any publishing agreements with Mr. Taylor or LeBaron Music directly. / Busch Decl. ¶ 4 ((Deposition of Clinton 48:24-49:6).

98. Mr. Clinton never saw a royalty statement from Mr. Taylor. / Busch Decl. ¶ 4

((Deposition of Clinton 62:3-6).

99. Defendants have not produced any documents showing assignment by Mr. Clinton of his rights in the Bridgeport Compositions to any individual or entity other than Bridgeport. Busch Decl. ¶ 3 ((Deposition of Ms. Taylor 15:5-11).

### B. Mr. Taylor's Passing

100. In 2000, Mr. Taylor passed away leaving behind his widow, Ms. Taylor. Busch Decl. ¶ 3 (Deposition of Ms. Taylor 14: 7-8).

101. Mr. Taylor had a Will in which he did not bequeath Ms. Taylor any rights to the Bridgeport Compositions. / Busch Decl. ¶ 19 (Exhibit 18).

102. Mr. Taylor's Will directs that his residuary estate be distributed in equal shares to only Tiffani Taylor, Jason Richardson, Eric Taylor, and Laura Davis. Busch Decl. ¶ 19 (Exhibit 18).

### C. Ms. Taylor's Sale to TufAmerica

103. In 2011, Ms. Taylor was approached by Aaron Fuchs ("Mr. Fuchs"), the owner of TufAmerica, about entering into a purchase agreement for the Bridgeport Compositions. / Compl. ¶ 18; Busch Decl. ¶ 3 (Deposition of Ms. Taylor 25:24-26:14).

104. Ms. Taylor expressed concern that she did not own the Bridgeport Compositions and told Mr. Fuchs that she could not warrant and represent that she had any rights to grant. / Busch Decl. ¶ 3 (Deposition of Ms. Taylor 31:5-32:12).

105. Ms. Taylor did not engage anyone to research her claims to the Bridgeport Compositions. / Busch Decl. ¶ 3 (Deposition of Ms. Taylor 28:12-16).

106. Mr. Fuchs asked Ms. Taylor if she "had any paperwork that went along with it and [she] told him, No, I did not."/ Busch Decl. ¶ 3 (Deposition of Ms. Taylor 28:3-11).

107. Ms. Taylor never had any written assignment from Mr. Clinton to Mr. Taylor or any of Mr. Taylor's entities actually assigning ownership in any songs or recordings to Mr. Taylor or any of his entities. / Busch Decl. ¶ 2 (Deposition of Ms. Taylor 15:5-11).

108. Mr. Fuchs and TufAmerica understood that Ms. Taylor had no written documents granting her or Mr. Taylor any copyrights. / Busch Decl. ¶ 2 (Deposition of Fuchs 45:2-13) .

109. TufAmerica did not engage in any additional research such as searching the Copyright Office or Performance Rights Organization records or engaging anyone to research chain of title of the Bridgeport Compositions. / Busch Decl. ¶ 2 (Deposition of Fuchs 33:14-20).

110. TufAmerica's due diligence prior to purchasing alleged rights from Ms. Taylor was limited to Fuch's statement: "I reviewed the discography and I discussed with [Ms.] Taylor her rights. I knew that she was a wife and his successor in interest. [] So that was at that time sufficient for me to move forward." / Busch Decl. ¶ 2 (Deposition of Fuchs 43:2-7).

111. TufAmerica and Ms. Taylor entered into an Agreement on August 9, 2011 wherein Ms. Taylor allegedly sold, assigned, and transferred to TufAmerica 50% of the ownership interest and all worldwide copyright, renewals, and/or other rights in certain musical works, on behalf of "herself, Revilot Records, Red Cap Records, Solid Hit Records, Solid Hitbound Productions, LeBaron Music, Groovesville Music, Brute Records, The Estate of LeBaron Taylor and all other companies owned and/or controlled by the Estate" for $6,500 ("2011 Agreement"). / Busch Decl. ¶ 18 (Exhibit 18), ¶ 3 (Deposition of Ms. Taylor 39:18-23).

112. Fuchs testified that despite the fact that he has never seen paperwork between Mr. Mr. Clinton and Mr. Taylor, he "didn't do all that searching until after [he] had purchased the catalog." / Busch Decl. ¶ 2 ((Deposition of Fuchs 36:2-7, 69:21-24).

113. After entering into the 2011 Agreement, Ms. Taylor told her attorney Vernon

Slaughter ("Slaughter") that she was "uncomfortable" with the "Representations and Warranties" section of the Agreement because she had "no written documents, just the tapes." / Busch Decl. ¶ 11 (Exhibit 10).

114. Slaughter instructed counsel for TufAmerica to remove the second sentence in the "Warranties and Representations" clause of the 2011 Agreement. / Busch Decl. ¶ 11 (Exhibit 10).

115. Fuchs did not read Mr. Taylor's Will prior to entering into the August 9, 2011 Agreement and only saw Mr. Taylor's Will for the first time in the days leading up to his February 26, 2021 deposition. / Busch Decl. ¶42 (Deposition of Fuchs 50:1-51:9).

## V. THIS ACTION

116. On December 11, 2017, six years after entering into a purchase and administration agreement concerning a portion of the Bridgeport Compositions, TufAmerica sent a letter to Plaintiffs on behalf of itself and as administrator for LeBaron Music raising various unfounded assertions relating to copyright infringement and ownership of the Bridgeport Compositions at issue. / Compl. ¶ 4; /Busch Decl. ¶ 17 (Exhibit 16).

117. Neither TufAmerica nor Ms. Taylor made ownership claims concerning Plaintiffs' exploitation of the Bridgeport Compositions until the December 11, 2017 letter. / Compl. ¶¶ 48, 55, 61, 66, 72, 74; Busch Decl. ¶¶ 17, 21 (Exhibits 16, 20).

118. Plaintiffs responded to TufAmerica's letter, requesting that TufAmerica provide context for its asserted claims. / Busch Decl. ¶ 20 (Exhibit 19).

119. TufAmerica never provided the documentation or other context for its asserted claims. / Busch Decl. ¶¶ 17, 21 (Exhibits 16, 20).

120. Plaintiffs informed TufAmerica that Bridgeport has had registered copyrights in each of the Bridgeport Compositions at issue for nearly fifty years and has openly exploited each

since the 1970s without any objection or claim to ownership by Defendants, or their predecessors in interest. / Busch Decl. ¶ 20 (Exhibit 19).

121. Plaintiffs also informed TufAmerica that Bridgeport registered the musical Bridgeport Compositions at issue with BMI in the 1970s, and has been receiving royalties on the Bridgeport Compositions at issue since that time, again without any objection or claim to rights by Defendants, their predecessors in interest, or anyone else for that matter. / Busch Decl. ¶ 20 (Exhibit 19).

122. In a letter dated January 5, 2018, TufAmerica acknowledged that there was no formal objection or claim by Defendants, or their predecessors in interest, between the 1970s, when Plaintiffs began to openly exploit the Bridgeport Compositions, and December 11, 2017. / Compl. ¶ 21; Busch Decl. ¶ 21 (Exhibit 20).

123. Plaintiffs brought this action in the U.S. District Court for the Eastern District of Michigan on January 11, 2018 seeking declaratory judgment that: (1) Plaintiffs have not infringed upon any copyrights allegedly owned and/or controlled by Defendants by re-recording, commercially releasing, and/or otherwise exploiting the Bridgeport Compositions ; (2) Plaintiffs are the rightful owners of the Bridgeport Compositions ; and (3) Defendants do not have an interest in the copyrights to the Bridgeport Compositions . *See* Compl, generally.

124. On April 12, 2019, Defendants brought counterclaims against Plaintiffs for copyright infringement, accounting, and a declaratory judgment that Defendants own and/or control the entirety of the Bridgeport Compositions. *See* Amended Answer, generally.

125. On December 9, 2019, while this action was pending, TufAmerica purchased the remaining share of Ms. Taylor's alleged interest in the Bridgeport Compositions for $6,000 (the "2019 Agreement"). / Busch Decl. ¶¶ 3, 18 (Deposition of Ms. Taylor 39:10-23, Exhibit 17).

PLAINTIFFS' RULE 56.1 STATEMENT OF MATERIAL FACTS

126. TufAmerica asserts that it owns the Bridgeport Compositions pursuant to the 2011 Agreement and 2019 Agreement. / Amended Answer, generally; Busch Decl. ¶¶ 18, 22 (Exhibits 17, 21).

127. TufAmerica does not assert that it owns the Westbound Sound Recordings. / Amended Answer, generally; Busch Decl. ¶¶ 18, 22 (Exhibits 17, 21).

DATED: November 8, 2021            **KING & BALLOW**

By: /s/ *Richard S. Busch*
Richard S. Busch
KING & BALLOW
1999 Avenue of the Stars, Suite 1100
Century City, CA 90067
Telephone: (424) 253-1255
Facsimile: 888-688-0482
rbusch@kingballow.com

*Attorney for Plaintiffs*
*Bridgeport Music, Inc. and*
*Westbound Records, Inc.*